THE STATE OF MISSOURI ex rel. LESLIE A. HULL, Appellant, v. W. A. GRAY, Respondent.

Kansas City Court of Appeals, January 6, 1902.

1. **Offices and Officers:** DUTIES OF: PLEADING. Allegations of duties of an office can not be considered unless they are declared to be imposed by law, though it may be legally proper to infer such duties as the title would necessarily indicate.

2. ———: KANSAS CITY ORDINANCES: CITY HALL ENGINEER. Under the ordinance of Kansas City the chief engineer of the city hall is not an officer but a mere employee.

3. ———: TESTS OF: OATH. Taking an official oath is a consti-
tutional prerequisite to hold an office in Missouri; but where no
oath is required of the occupant of a position, the voluntary taking
of an oath will not convert such position into an office.

4. ———: DEFINITION: EXERCISE OF SOVEREIGNTY. Aside
from the declaration of a competent lawmaking body, no one should
be considered a public officer whose duties do not pertain to a
governmental function in some of the departments of govern-
ment, but the exercise of such sovereignty makes the party an
officer, however humble or exalted the position.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,*
Judge.

AFFIRMED.

*Brown, Bailey & Groff* for appellant.

(1) Our Constitution gives a definition of an office
when in article 2, section 18, it says: "That no person
elected or appointed to any office or employment of trust or
profit under the laws of this State or any ordinance of any
municipality in this State shall hold such office without per-
sonally devoting his time to the performance of the duties to
the same belonging." Beyond all peradventure of doubt the
words "office" and "employment of trust" are used as synony-
mous. Both are referred to as "such office." Every office is
an employment; and every public employment of trust, which
is continuous and the duties of which are defined by law and
not by contract, is a public office. Bacon's Abr., tit. "Office,"
says that an office "is a place of trust." 2 Blackstone, 36;
U. S. v. Maurice, 2 Brook. 103; The Illinois Constitution of
1870, art. 5, sec. 24; Cooley's Prim. Cons. Law, 303. (2)
The position, in the case at bar, comes clearly within all of
the definitions above quoted and within every rational defini-
tion that can be found in the books. Indeed, in this State no
public position of trust created by law has ever been held to be
anything but an office. State ex rel. v. Johnson, 123 Mo. 43

(chief of fire department); State ex rel. v. May, 106 Mo. 488 (superintendent of streets); State ex rel. v. Bus, 135 Mo. 325 (deputy sheriff); State ex rel. v. Valle, 41 Mo. 29 (water commissioner); Westberg v. Kansas City, 64 Mo. 493 (policeman); State ex rel. v. Alt, 26 Mo. App. 673. (3) The following suggestions as to tests of office are made in the reports and text-books on the subject: (a) the source of the authority, and the manner of appointment or election; (b) the nature of the powers and duties; (c) the tenure; (d) the title. State ex rel. v. Walbridge, 69 Mo. App. 657; High on Extraordinary Remedies, sec. 625; State ex rel. v. Stewart, 32 Mo. 379.

*J. J. Williams* for respondent.

It is the contention of respondent that the position in controversy here is an employment, and is not an office within the meaning of the statute on "Quo Warranto" (R. S. 1899, sec. 4457); and that, therefore, this proceeding can not be maintained. (1) The duties which the law considers are those which are created by some adequate power and imposed in some definite manner. The very language used by the appellant in stating the alleged duties amounts to a demonstration that such duties were not imposed or defined by any charter provision or ordinance. If usage might create or define the duties, such usage is not alleged. There can be no city officers, nor can such officers have any duties, except under the authority of the charter. Art. 4, sec. 15, City Charter; State ex rel. v. Walbridge, 69 Mo. App. 657. Ordinance Approved, October 14, 1892. (2) What are the duties of the position in question in this case? As stated in the ordinances, he is to appoint certain assistants and apportion hours of work. (3) "An office, such as to properly come within the legitimate scope of a quo warranto information, may be defined as a public position to which a portion of

the sovereignty of the country, either legislative, executive, or judicial, attaches for the time being and which is exercised for the benefit of the public." High on Ex. Leg. Rem., sec. 625. 19 Am. and Eng. Ency. Law, p. 383; High, etc., sec. 626; State ex rel. v. Valle, 41 Mo. 29; State ex rel. v. Bus, 135 Mo. 325; City Charter, art. 4, sec. 16, p. 53.

ELLISON, J.—This is a proceeding by quo warranto whereby relator Hull seeks to oust respondent Gray from the position of engineer of the city hall, in Kansas City. An amended information was filed and respondent demurred thereto. The demurrer was sustained by the circuit court and relator has brought the case here.

The point in controversy for decision is whether the position of engineer for the city hall is a public office. From the information, it appears that by the following ordinance of said city, entitled "Substitute ordinance, providing for appointment of certain employees in city hall building," an engineer was to be appointed, viz.:

"Section I. That the mayor of Kansas City, Missouri, with the approval of the upper house of the common council, is hereby authorized to appoint employees as are required for the care and maintenance of the new city hall building as follows, at salaries herein named, to-wit: One engineer at one hundred dollars per month. One janitor at sixty-five dollars per month. Provided that the said engineer with the approval of the mayor may employ one assistant engineer at the salary of seventy-five dollars per month, two firemen at sixty dollars per month each, and two elevator boys at thirty-five dollars per month each. That the said janitor with the approval of the board of public works may employ two assistant janitors at salaries of forty dollars per month each.

"Section II. Said employees shall receive above amounts as full compensation for their services, and shall be paid in the

same manner and at the same time as other employees of
the city are paid."

That afterwards an ordinance was passed authorizing the
engineer (designating chief engineer) to employ two assistant
engineers and that he should so apportion the work between
them and himself that each would work eight hours a day.
That afterwards an ordinance was passed authorizing the en-
gineer to employ three fireman or stokers, who also should
work eight hours per day.

The pleader then further alleges, that by said ordinances
the municipality created the office of "chief engineer of city
hall." That said hall is a public building for the transaction
of public business connected with the city and in which the
city records are kept. That it is the duty of such engineer
to exercise general superintending care and control over the
heating machinery and electric lighting machinery in said
building and in the city market building, situated in the same
block. That it was his duty to exercise control over the
subordinate employees aforesaid, as well as two elevator boys;
and to keep account of their time and make out payrolls.
That it was his duty to issue requisitions upon the board of
public works for all repairs and supplies needed, and to see
that the supplies were properly used and the repairs properly
made.

There is no allegation of any duties of the engineer
prescribed by law or ordinance. We can not consider allega-
tions of duty which are not declared to be imposed by law or
an ordinance (United States v. Smith, 124 U. S. 525, 533),
though it is perhaps legally proper to infer such duties to be
imposed upon the position as its title would seem necessarily to
indicate. With the exception of superintending the lighting
of the city market and making requisitions on the board
of public works for supplies, the allegations just stated may
be naturally inferred to be the duties of an engineer for the
city hall.

We will therefore pass to the question whether the engineer is an officer, or merely an employee. Definitions of a public office, or a public officer, are numerous and are all necessarily couched in general language. Mechem on Public Offices and Officers, section I, states the following, which has also been stated by our Supreme Court (State ex rel. v. Valle, 41 Mo. 29; State ex rel. v. Bus, 135 Mo. 325), viz.: "A public office is the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer."

Accepting that definition, it is clear that the position of engineer of the city hall is not a public office, and that it is a mere employment. There is no exercise of sovereign power, direct or indirect connected with the place. His service is mere manual service, as distinct from the ordinary acceptation of an officer performing the duties of an office, as can well be conceived. The incumbent is not required by the ordinances aforesaid to give bond or to take an oath of office. And indeed the ordinance authorizing the appointment of an engineer itself repels the idea of his being an officer and specially designates him as an *employee* and classes him along with the janitor, assistant janitor, firemen and elevator boys. They are all classed and designated by the same term.

However, the generality of the definition of a public office and the difficulty of distinguishing in many cases between a mere employment and an officer, has led to much litigation on the question. The fact that a position in the public service may be inconsequential and its honor not much sought, does not prevent its being a public office. Thus, a deputy constable is a public officer, for to him is granted a portion of important sovereign power of the executive branch. So is a school director for he may, among other things, levy taxes.

But, the fact that an office may be low down in the scale of honor and emolument, does not justify all those in public employment in attempting to place themselves in that class. By far the greater number of those in municipal employment are mere municipal agencies for carrying on municipal government in its various departments. Thus a street laborer, a bookkeeper, a janitor and a watchman are each an agent in his department for carrying on the city government, but no one should think of calling them public officers, in the absence of a statutory declaration.

It was held in Throop v. Langdon, 40 Mich. 673, a case with many features similar to this, that the "chief clerk" in the office of the city assessor was not an officer. And so it was held that an enrolling clerk of the State House of Representatives was but an employee. "Any others of the persons employed by the Legislature, or authorized by them to be employed about the capitol such as watchmen, firebuilders, or sweepers of the halls, might just as well be styled officers as such clerk." State v. Gardner, 43 Ala. 234. A nightwatchman for Federal building is not an officer. Doyle v. Raleigh, 89 N. C. 133. While school directors come well within the definition of a public officer, in that they take an oath of office and exercise sovereignties by the levy of taxes, etc., yet it would hardly be contended that school teachers in the State public schools were officers, notwithstanding they receive stated salaries for stated terms. So it has been held that a professor in a State University was not a public officer. Butler v. The Regents, 32 Wis. 124. And the foremen and engineers of the fire department of New York, are not public officers. People v. Pinckney, 32 N. Y. 377, 388; Trustees Firemens Fund v. Roome, 93 N. Y. 313, 319.

Taking an official oath may be said to be a prerequisite to the right, *de jure*, to hold an office. The oath of office marks the entrance upon the duties of an officer. And so we find that all officers under the authority of the State, be-

fore entering on their duties, must take and subscribe an oath to faithfully demean themselves in office and support the Constitution of the United States and of this State.    Section 6, article 14.

In this case, while the pleader alleges that relator took an oath of office, none, as before stated, seems to have been required by the ordinances aforesaid.    The oath, like that taken by the "chief clerk" in Throop v. Langdon, supra, was a mere volunteer formality not called for by the ordinance creating the position.    Nor do we discover any more necessity for administering an oath to him, so far as the duties of the position are concerned, than there would be in performing a like ceremony for carpenters, plumbers, and other employees about public buildings.

There are cases where a state or municipal statute may make a certain position an office, as in State ex rel. v. May, 106 Mo. 488; and as was conceded by counsel in State ex rel. v. Johnson, 123 Mo. 43.    But, aside from the declaration of a competent lawmaking body, no one should be considered a public officer whose duties do not pertain to an exercise of sovereignty or governmental function in some of the departments of government.    Bun v. The People, 45 Ill. 397, 408. It will be found on examination, that no other definition shows a distinction between office and employment nearly so well. That definition does enable one to determine cases with some degree of uniformity, while any other which has been seen, in an extended examination, is of little value as a guide, and confusing in its generality of statement.

The relator has no standing on his information and the judgment will be affirmed.    The other judges concur.